```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

AL WILLIAMS,                          )  Docket No. 08 C 6409
                                      )
              Plaintiff,              )  Chicago, Illinois
                                      )  June 7, 2011
         v.                           )  9:21 a.m.
                                      )
CITY OF CHICAGO, and CHICAGO          )
POLICE OFFICERS Z. RUBALD, Star       )
#14540, B. CORCORAN, Star #8261,      )
S. LECK, Star #2752, B. GENTZLE,      )
Star #8738, T. JAROS, Star            )
#10428, and UNKNOWN CHICAGO           )
POLICE OFFICERS,                      )
                                      )
              Defendants.             )

             TRANSCRIPT OF PROCEEDINGS - Motion
            BEFORE THE HONORABLE JOAN H. LEFKOW

APPEARANCES:

For the Plaintiff:       JARED S. KOSOGLAD PC by
                         MR. JARED S. KOSOGLAD
                         451 West Huron Street
                         Suite 1410
                         Chicago, Illinois 60654

                         SHILLER PREYAR LAW OFFICES by
                         MR. BRENDAN SHILLER
                         1100 West Cermak Road
                         Suite B401
                         Chicago, Illinois 60608

For the Defendants:      PUGH JONES JOHNSON & QUANDT PC by
                         MR. WALTER JONES, JR.
                         MR. JORGE V. CAZARES
                         180 North LaSalle Street
                         Suite 3400
                         Chicago, Illinois 60601-2807

Court Reporter:          LAURA R. RENKE, CSR, RDR, CRR, CLR
                         Federal Contract Reporter
                         77 West Washington Street, Suite 718
                         Chicago, Illinois 60602
                         708.447.0905   laurarenke@hotmail.com
```

1     (In open court:)
2         THE COURTROOM DEPUTY: 08 C 6409, Williams v. City of
3  Chicago.
4         MR. KOSOGLAD: Good morning, your Honor. Jared
5  Kosoglad and Brendan Shiller for the plaintiff.
6         THE COURT: Good morning.
7         MR. JONES: Good morning, your Honor. Walter Jones,
8  Jr., and Jorge Cazares on behalf of the City.
9         MR. CAZARES: Good morning, Judge.
10        MR. SHILLER: Good morning.
11        THE COURT: All right. Well, we have here issue that
12  calls -- I think I told you on the -- before that the motion
13  for new trial was denied, but I don't think it ended up on
14  the -- on the record. Maybe I didn't.
15        So but it comes down to the issue -- I don't -- I
16  don't think there's any basis for a new trial. It comes down
17  to the issue of remittitur, and you've filed cases on both
18  sides of the issue. And it seems to me something of a matter
19  of discretion whether -- you know, a judgment call: Does this
20  shock the conscience?
21        Certainly $100,000 is rarely very shocking. It's
22  somewhat large for what happened to him. And then the jury
23  verdict was a little curious because while it wasn't an
24  inconsistent verdict, it seemed sort of counterintuitive, shall
25  we say. But jury verdicts are often that way, I must say.

1            So this man didn't have any medical care, and he
2   doesn't get any damages for being held in custody for a period
3   of time -- which was what?  How long was that?  I was trying to
4   remember.
5            MR. SHILLER:  40 days, your Honor.
6            THE COURT:  20?
7            MR. SHILLER:  40 days.
8            THE COURT:  40 days.
9            MR. SHILLER:  Does your Honor want to hear any
10  argument?
11           THE COURT:  Pardon me?
12           MR. SHILLER:  Does your Honor want to hear any
13  argument?
14           THE COURT:  Sure, I can hear you.  Whose motion is it?
15  It's Defendants' motion.
16           MR. CAZARES:  It's our motion, Judge.
17           MR. JONES:  It's our motion, Judge.
18           THE COURT:  I'll hear from you first.
19           MR. JONES:  Judge, you know, you were very attentive
20  during the course of this trial.  And one of the things that is
21  so clear here is that -- that what this is based upon was the
22  abrasion on his forehead, that he never had one stitch, never
23  received one parcel of treatment.  No treatment at all.  He
24  never even got Mercurochrome on this thing.  He never -- he
25  never sought out any treatment of his own.

1    And this $100,000 for -- for this claim, no matter how
2 you look at this, this is -- and the jury -- when you take a
3 look at everything that went on, that of all the counts, no
4 malicious prosecution, no conspiracy, no intervention, none of
5 that.  And it comes down to the single claim where he didn't
6 even get Mercurochrome on his head.
7    Judge, this is excessive.  There is something -- this
8 is in your discretion, and we're just -- we think that we're
9 entitled to some relief here.
10    THE COURT:  Mr. Shiller.
11    MR. SHILLER:  Thank you, your Honor.
12    I think there's three points.  The first is what the
13 transcripts don't show is the character and quality of the
14 pictures which the jury viewed in person, the character and
15 complexion of the testimony and whatever fear and emotional
16 anger that -- that the plaintiff felt at the time of this
17 incident and how he described it, which the jury heard in
18 person.  That's the first part.  That's -- that's not what's in
19 the transcripts.
20    The second thing is no matter how much Defendants
21 wanted to say it's just this one injury, it was multiple
22 injuries; it was multiple actions over a period of time.  There
23 was a bruise to the shoulder introduced; the jury must have
24 believed that.  Otherwise, they wouldn't have had this
25 judgment.  There was a bruise to the elbow introduced; the jury

1   must have believed that.  There was testimony of a punch to the
2   groin; the jury must have believed that.  And there was
3   testimony of punches to the stomach; the jury must have
4   believed that.
5           And, third, when we look at these other cases, what we
6   see with some of these other cases which were upheld because
7   they were within the discretion, the $50,000 for the simple
8   assault, there is -- there is a value in the fear and in the
9   anger that comes from being assaulted and battered from a
10  person of authority, and that value is immeasurable.  In one
11  case, at least the one case we presented, that value was
12  $50,000.  And that's a separate value from any actual physical
13  damages.
14          So clearly while $100,000 is more than is usually
15  granted in these cases, while $100,000 is higher than any other
16  jury we give, the case law teaches just because we pled our
17  facts better and just because the jury chose to believe our
18  client in all of his testimony, both his physical and emotional
19  damages as it relates to that assault and battery, does not
20  mean you should reduce the damages.
21          MR. JONES:  I would just say one last thing, Judge.
22  You know, one of the things that you know about this case is
23  when we talk about his emotional state, he had been arrested
24  more times than Michelangelo saw ceilings.  It's not like this
25  was -- he's been arrested damn near 40 times.  It's not like

1  you look at me and say, well, whoa.  Here it is I'm arrested
2  for the very first time in my life.
3           So when you take a look at all of this, I would say,
4  to end up, we think we're entitled to some relief here.
5           THE COURT:  Well, I don't know if that's a very good
6  argument, Mr. Jones, because I don't know anything about those
7  other arrests or how many times he was convicted or anything.
8  I can only deal with one at a time.
9           MR. JONES:  They were part of our motions, Judge, if
10 you recall.
11          THE COURT:  Yes, but it's -- you know, I have other
12 cases.
13          I think that to say this verdict was monstrously
14 excessive is -- it's not fair.  I mean, we've got the one case
15 with the $50,000 award for simple assault, and then we have,
16 you know, the case that Judge Holderman -- I think it was
17 Holderman who reduced $1 million to $200,000.  So, you know,
18 when you get -- if the jury had awarded him $1 million or
19 $500,000, I certainly would agree with you that that would be
20 excessive for this case.
21          But, you know, it took him two years of litiga --
22 three years of litigation to get where he got, and, you know,
23 you could have settled this for under $100,000, and you, you
24 know, refused to talk about settlement in any serious way.  And
25 the jury came in for the plaintiff.

1            And I don't think it's monstrous.  It's large.  It's
2  bigger than usual.  But that's what juries do.  They assess
3  damages.  And I don't really have a basis for intervening other
4  than to, you know, say if I had been the jury, I would have
5  given him $75,000 or something -- I don't know -- 25,000.  Who
6  is going to say?  That's what juries do.
7            So motion is denied.
8            Where do we stand on the fee issue?
9            MR. KOSOGLAD:  Judge, we're preparing a joint
10  statement pursuant to Local Rule 54.3.  And I think it's due
11  Thursday, but we would ask -- we're working on preparing it for
12  an extra -- for -- I guess for a week from today.
13            MR. CAZARES:  For a week, yeah.
14            THE COURT:  Can you settle it?
15            MR. CAZARES:  Well, we met for two hours yesterday,
16  Judge, and, you know, that's an option.  It's all I can say
17  right now, that yes, we met for two hours, and we're -- that's
18  why we're pushing off this joint statement, to see if we can
19  try to do something.
20            THE COURT:  Okay.
21            MR. SHILLER:  We recognize -- and I think your Honor
22  should too -- that this is one of those cases where the City
23  transition probably stalled things out a few weeks.
24            THE COURT:  Oh, right, right.
25            MR. SHILLER:  So we may work towards a settlement.

1               THE COURT:  Okay.  Well, I guess you're on a schedule,
2    so I don't need to set a status, right?
3               What about costs?  Have they been filed?
4               MR. KOSOGLAD:  Yes.
5               THE COURT:  Assessed?  Taxed?
6               MR. SHILLER:  Well, they've been filed.  You know,
7    we'll -- we don't mind holding off on that.  It's part of what
8    we'll try to work out.
9               THE COURT:  So you can work it out with the fees
10   issue?
11              MR. JONES:  We're trying.
12              MR. CAZARES:  We're trying, Judge.
13              THE COURT:  Okay.
14              MR. KOSOGLAD:  Thank you.
15              THE COURT:  Be reasonable, Mr. Shiller.
16              MR. SHILLER:  Why are -- why are you singling out me?
17              MR. CAZARES:  Thank you, Judge.
18              THE COURT:  Because I -- I just shaved some off of
19   your --
20              MR. SHILLER:  Okay.
21              MR. JONES:  Yeah, you gave them -- they got a little
22   buff here.
23              THE COURT:  Okay.
24          (Adjourned at 9:30 a.m.)
25

1 C E R T I F I C A T E

3    I certify that the foregoing is a correct transcript of the
4 record of proceedings in the above-entitled matter.

7 /s/ Laura R. Renke                    June 9, 2011
Laura R. Renke, CSR, RDR, CRR, CLR      Date
Federal Contract Reporter
8 CSR License No. 084-003184